[Civ. No. 2594.    Third Appellate District.—May 31, 1923.]

## J. H. KENNEDY, Respondent, v. MARY A. SCALLY, Appellant.

[1] QUIETING TITLE—PAROL GIFT—PLEADINGS—JUDGMENT.—In an action to quiet title to real property which plaintiff claims he and his wife acquired from defendant under an executed parol gift, in which plaintiff sets up the facts upon which his claim of title is based, and defendant (the holder of the legal title) files a cross-complaint to quiet title in which she prays that "all adverse claims of plaintiff . . . may be determined by a decree of this court," and in compliance with such prayer the trial court adjudges that the gift of the land was good and valid and a complete executed gift, defendant is not prejudiced by a further provision of the decree quieting the title so adjudged in plaintiff.

[2] ID.—GIFT—EXPENDITURES—EVIDENCE—FINDINGS.—In such action, while there was ample evidence to have sustained a finding that no gift was made, there was also sufficient evidence to support the finding of the trial court that defendant gave the property to plaintiff and his wife; and the evidence also fully supported the findings of the court as to the expenditures made by plaintiff and his wife for permanent improvements on the property.

[3] ID.—EXCESS OF EXPENDITURES OVER RENTALS—STATUTE OF FRAUDS.—The expenditures made by plaintiff and his wife for permanent improvements on the property during the year they entered into possession under the parol gift and the succeeding calendar year having greatly exceeded the rental value of the premises during that period, plaintiff's possession and such expenditures relieved the parol gift from the operation of the statute of frauds and the rights of the parties then became fixed, and no subsequent receipts from the property or increased rental value thereof could affect those rights.

[4] ID.—EVIDENCE—PROVINCE OF TRIAL COURT—APPEAL.—The evidence to establish a parol gift of land should be clear and convincing; and whether the evidence in a given case is clear and convincing is a question in the first instance to be determined by the trial court, and its conclusion is not to be disturbed unless the reviewing court can say, after an examination of the entire record and all the circumstances surrounding the transaction as there disclosed, that such conclusion is unwarranted by the evidence.

[5] ID.—ACQUISITION OF INTEREST—EVIDENCE.—Plaintiff having been asked: "Did you ever acquire an interest in those premises," and de-

---

4.    Degree of proof necessary to establish parol gift of real estate, notes, 12 Ann. Cas. 494; 21 Ann. Cas. 289; 9 L. R. A. (N. S.) 508.

fendant's objection on the ground that the question called for the conclusion of the witness having been overruled, and the witness having answered in the affirmative and then testified fully as to the facts upon which his claim of interest was based, the ruling of the trial court could not have prejudiced defendant's rights.

[6] ID.—EVIDENCE—BELIEF OF DEFENDANT—RELIANCE UPON GIFT.—In an action to quiet title to real property which plaintiff claims to have acquired from defendant under an executed parol gift, plaintiff is properly permitted to testify that he would not have made the improvements if he had not believed that the property belonged to him as a gift from defendant, such evidence being admissible as tending to show that the improvements were made in reliance upon the gift.

[7] ID.—WEALTH OF DONOR—EVIDENCE.—In such action, evidence that at the time of the alleged gift defendant owned other property having a value of many thousands of dollars is properly admitted, as tending to rebut any inference that the gift was unnatural or had the effect of depriving her of her means of support.

[8] ID.—GIFTS TO OTHER CHILDREN—EVIDENCE.—In such action, evidence that subsequent to the time of the alleged gift defendant gave property to her two children other than plaintiff's wife without then giving anything to the latter, while perhaps of little weight, is consistent with and tends to support plaintiff's claim of a prior gift to him and his wife of the property in controversy.

APPEAL from a judgment of the Superior Court of Kings County. M. L. Short, Judge. Affirmed.

The facts are stated in the opinion of the court.

Power & McFadzean and John G. Covert for Appellant.

Everts, Ewing & Wild, C. A. Tuttle and H. Scott Jacobs for Respondent.

FINCH, P. J.—In addition to the usual allegations in a complaint to quiet title, the plaintiff alleged that defendant gave him and his wife, Margaret S. Kennedy, a daughter of defendant, the land in controversy, consisting of 160 acres, and that they took possession thereof under the gift and expended in making permanent improvements thereon the sum of $4,000 during the year 1912, $3,000 during 1913, and made valuable improvements in the years 1914 and 1915. The prayer is for a judgment decreeing "that plaintiff is the owner in fee simple absolute, possessed and entitled to the

possession of the undivided three-fourths of the real property above described; that the gift of the said quarter section of land described in said complaint by the said defendant Mary A. Scally to plaintiff and to his wife, Margaret S. Kennedy, is good and valid and a complete, executed gift; and that the defendant [plaintiff?] is entitled to the decree of this court quieting his title to said undivided three-fourths of said quarter section of land''; that defendant has no estate, right, title, or interest therein; that she be enjoined from asserting any claim thereto; and ''that plaintiff have such other and further relief as to the court shall seem meet and proper in the premises.''

The defendant answered, denying the foregoing allegations of the complaint and alleging that she permitted plaintiff's wife to occupy the land as the tenant of defendant, without charge or rental, and to ''retain the rents, issues, profits and products of said land''; that any improvements made by plaintiff and his wife upon the land were made solely for their own convenience in their occupation and use thereof; and that the reasonable rental value of the land was far in excess of the value of such improvements. The defendant also filed a cross-complaint against plaintiff in his individual capacity and as administrator of the estate of Margaret S. Kennedy, deceased, in the usual form of an action to quiet title. In her cross-complaint the defendant prayed that ''said plaintiff and said cross-defendants be required to set forth the nature of his or their claims and that all adverse claims of plaintiff or cross-defendants may be determined by a decree of this court,'' and that defendant's title be quieted and for general relief.

Evidence bearing upon the issues raised by the pleadings was presented by both parties without any objection as to the form or nature of the action. The court found that Margaret S. Kennedy died intestate on the seventeenth day of February, 1920, leaving surviving her the plaintiff and the defendant as her only heirs; that the defendant gave the land to plaintiff and his wife on or about August 15, 1912, and then and there placed them in possession of the same as the owners thereof; that during the year 1912 the plaintiff expended the sum of $4,000 in making permanent improvements thereon; that the plaintiff and his wife expended additional sums in making improvements as follows: $3,000 in

1913, $500 in 1914, and $50 in 1915; that ever since the gift was made they "held possession of said land, improved the same, harvested the crops raised thereon, leased the property, collected the rent and managed and controlled the said land as owners thereof," and claimed and "asserted that they owned the same as a gift" from defendant; that such permanent improvements have enhanced the value of the land "far above its rental value"; that the value of such improvements is "largely in excess of the value of the use and occupation of said land at the time of the making of the gift; that the increased rental value of said land in the year 1915, and subsequent years, was due to the enhanced value by reason of the improvements placed thereon by plaintiff and his wife"; that they resided on the land from November 15, 1913, to January 1, 1916; that since January 1, 1916, the land has been occupied by tenants under leases executed by defendant, but that the plaintiff conducted all the negotiations for the leasing of the premises and arranged the terms thereof; that defendant signed such leases merely because she held the record title to the land; that the rental thereof was paid direct to plaintiff and his wife; that the defendant did not at any time give any directions to the tenants under such leases, or make any demands upon them, or in any manner treat them as her tenants.

By the judgment it is decreed that plaintiff "is the owner in fee simple absolute, possessed and entitled to the possession of the undivided three-fourths of the real property described in the complaint"; that "the gift of said quarter section of land . . . by the said defendant and cross-complainant Mary A. Scally to plaintiff and cross-defendant J. H. Kennedy and to his wife, Margaret S. Kennedy, is good and valid and a complete executed gift; and it is decreed that the title of the plaintiff and cross-defendant, J. H. Kennedy, so acquired, be, and the same hereby is quieted and vested in such plaintiff and cross-defendant, J. H. Kennedy, to said undivided three-fourths of said quarter section of land"; that defendant "has no estate, right, title or interest whatever in or to said undivided three-fourths of said quarter section of land"; and that she be enjoined from asserting any claim thereto.

[1] The most serious question raised by appellant is whether the plaintiff, being the owner of the equitable title

only, was entitled to a decree quieting his title against the defendant, who held the legal title. Appellant cites many decisions in this state to the effect that an action to quiet title is not the proper remedy for the owner of an equitable interest to invoke against the owner of the legal title, among them being that of *Chase* v. *Cameron,* 133 Cal. 231 [65 Pac. 460]. In *Aalwyn's Law Institute* v. *Martin,* 173 Cal. 21, 26 [159 Pac. 158, 160], it is said: ''The reason for the rule announced in *Chase* v. *Cameron,* is that if the owner of equities could sue to quiet title he might obtain a judgment based upon his adversary's fraud without setting up, in his pleadings; the facts constituting such fraud. This would be manifestly unfair.'' In the instant case the complaint and the answer to the cross-complaint set up the facts upon which plaintiff's claim of title is based. The plaintiff and the cross-defendants prayed for general relief. Under the pleadings and on the findings they were entitled to a decree determining their interest in the land. It may be conceded that a more appropriate judgment would have been one declaring that the defendant held the legal title in trust for plaintiff and cross-defendants and requiring her to convey the same to them. The objection now made to the judgment was raised for the first time in appellant's reply brief. Had it been made at the trial it is probable that the more appropriate judgment would have been rendered. Further, the defendant prayed that ''all adverse claims of plaintiff or cross-defendants may be determined by a decree of this court.'' In compliance with such prayer the decree adjudges ''that the gift of said quarter section of land . . . is good and valid and a complete executed gift.'' If the judgment had gone no further it would have established plaintiff and cross-defendants' ownership of the land. Defendant's rights are not prejudiced by the further provisions of the decree quieting the title so adjudged.

[2] Appellant contends that the evidence is insufficient to establish the alleged gift. Plaintiff testified that about February, 1912, when himself and wife and defendant and her son were together, Mrs. Kennedy said to plaintiff: ''Mama has come over and turned over one of her ranches to us to farm''; that defendant's son asked if that was the proposition made and the defendant said: ''No, I gave them the ranch to do what they pleased with''; that ''she told me she

would like to have me come over right away; she would turn
things over to me. . . . Two or three days later I went to
Lemoore. . . . I think my wife went with me and Mrs.
Scally to the ranch. . . . Mrs. Scally took me to the men; I
think there were two; . . . and she told them from now on
to look to me for their pay; that she had turned the ranch
over to us and she was through with it. . . . She says: 'I
will give you the ranch and if you want the horses you can
buy them or use them for a while and afterwards I will sell
them.' " J. K. Kennedy, plaintiff's father, testified that on
two occasions defendant said she had given the place to
plaintiff and his wife. C. K. Kennedy, plaintiff's brother,
and Walter McNamara testified that defendant had made
similar statements. Defendant denied having given the land
to plaintiff or his wife or having made the statements related
by plaintiff and his witnesses. There is ample evidence to
have sustained a finding that no gift was made but there is
also sufficient evidence to support the finding of the court
that the defendant gave the property to plaintiff and his
wife, and appellant's argument in this connection is ad-
dressed to the weight of the evidence rather than its
sufficiency.

The evidence fully supports the findings of the court as
to expenditures made by plaintiff and his wife for permanent
improvements. It shows clearly that the alleged gift was
made, if at all, not later than February, 1912, and that imme-
diate possession was taken. The complaint alleges and the
court finds that the gift was made and possession given about
August 15, 1912. This discrepancy is important only as bear-
ing upon the amount expended in reliance upon the gift.
The court finds that $4,000 was so expended in 1912, without
specifying in what part of the year the expenditures were
made. It may reasonably be inferred from the evidence that
a considerable part of such expenditures were made prior
to August 15th of that year. However, if the $4,000
expended in 1912 be eliminated entirely, the findings as to
expenditures in subsequent years sufficiently support the
judgment. The sum of $3,000 was expended in 1913. Testi-
mony as to the rental value of the premises at the time the
gift was made ranged from $160 to $800 a year. The ex-
penditures made in 1913 alone, therefore, were nearly four
times the highest estimate of the rental value and more than

eighteen times the lowest estimate.  After January 1, 1916, the premises were leased for a cash rental of $2,000 a year. This higher rental was due to the fact that plaintiff had leveled and checked the land and planted it to alfalfa.  Appellant attempts to show that the rental value of the premises exceeds the alleged expenditures for improvements by adding plaintiff's gross receipts, including the receipts from a dairy conducted by plaintiff, prior to January 1, 1916, to the rentals received thereafter.  The total amount so received undoubtedly exceeds such expenditures.  The argument, however, is manifestly unsound.  [3] It is perfectly clear that the expenditures made up to January 1, 1914, greatly exceed the rental value of the premises from February, 1912, to January, 1914.  Plaintiff's possession and expenditures made up to that time relieved the parol gift from the operation of the statute of frauds and the rights of the parties then became fixed.  No subsequent receipts from the property or increased rental value thereof could affect those rights. (*Howard* v. *Stephens*, 38 Cal. App. 296, 314 [176 Pac. 65].) The increased rental value of the premises was due largely to the improvements made by plaintiff and his wife.  "The fact that the permanent and valuable improvements spoken of have given to the property a rental value it did not theretofore have is a false quantity.  Otherwise the very thing equity requires to be done would defeat its object." (*Howard* v. *Stephens,* 38 Cal. App. 314 [176 Pac. 71].)  [4] The evidence to establish a parol gift of land should be clear and convincing.  "Whether the evidence in a given case is clear and convincing is a question in the first instance to be determined by the trial court, and its conclusion is not to be disturbed unless the reviewing court can say, after an examination of the entire record and all the circumstances surrounding the transaction as there disclosed, that such conclusion is clearly unwarranted by the evidence." (*Howard* v. *Stephens*, 38 Cal. App. 311 [176 Pac. 70]; *Couts* v. *Winston*, 153 Cal. 686, 688 [96 Pac. 357]; *Beckman* v. *Waters*, 161 Cal. 581, 584 [119 Pac. 922].)

"The cases are numerous, and the rule may be considered well settled, that where a parol gift of real estate is made *in praesenti*, and the donee has entered under the gift, and has made permanent and valuable improvements upon the realty, and the circumstances are such that it would be unjust to

the donee if he were thereafter to be deprived of the property by reason of imperfections in the gift, equity will treat the acts of the donor, together with the acts of the donee, as being such performance of the gift as will relieve the contract from the operation of the statute of frauds, and it will under such circumstances lend its assistance to the perfection of the donee's title." (*Burris* v. *Landers,* 114 Cal. 310, 313 [46 Pac. 162, 163]; *Husheon* v. *Kelley,* 162 Cal. 656 [124 Pac. 231]; *Howard* v. *Stephens, supra; Kinsell* v. *Thomas,* 18 Cal. App. 683 [124 Pac. 220].)

[5] Plaintiff was asked: "Did you ever acquire an interest in those premises?" Defendant objected on the ground, among others not urged on appeal, that the question called for the conclusion of the witness. The objection was overruled and the witness answered in the affirmative. The witness testified fully as to the facts upon which his claim of interest was based and hence the ruling could not have prejudiced defendant's rights. A witness was asked by counsel for plaintiff as to the cost of the improvements made by plaintiff. He answered: "I couldn't do it for a hundred dollars an acre." Defendant's counsel moved to strike out the answer but the court failed to rule on the motion. While the answer should have been stricken out, the witness later testified that the reasonable cost of making the improvements was a hundred dollars an acre. This cured the error in failing to strike out the former answer. [6] Plaintiff was permitted to testify that he would not have made such improvements if he had not believed that the property belonged to him as a gift from defendant. The evidence was admissible as tending to show that the improvements were made in reliance upon the gift. [7] Evidence was properly admitted to show that at the time of the alleged gift the defendant owned other property of the value of more than $150,000. She purchased the property in suit for $65 an acre in the year 1909. Evidence of the total value of her property tended to rebut any inference that the gift was unnatural or had the effect of depriving her of her means of support. [8] Evidence was admitted over defendant's objection to the effect that in the year 1919 the defendant gave valuable properties to another daughter and to the son of defendant respectively. The fact that she gave property to two of her three children in that year without then giving

anything to the third, the plaintiff's wife, while perhaps of little weight, is consistent with and tends to support plaintiff's claim of a prior gift to him and his wife of the property in controversy.

The court found that plaintiff's wife paid part of the taxes upon the land after the time of the gift and the defendant a part thereof. Appellant contends that the evidence is insufficient to support this finding. The question of payment of taxes is not a material issue in the case. Plaintiff's cause of action is not dependent thereon and defendant made no claim for reimbursement for taxes paid. The same is true as to water assessments paid by defendant. Other points relied on are similar to those discussed and what has been said sufficiently disposes of them.

The judgment is affirmed.

Burnett, J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 30, 1923.